Morning. We'll call the matters as they appear on the calendar. Revelous versus Chicago insurance. That's number one that's submitted on the briefs. And now we come to Lopez and others versus the city of Los Angeles. Good morning. Morning. My name is Luis Carrillo. I represent both. And what this case really stands for is, especially Janita's case, is the effort on my part to establish a remedy for a little girl who is in fact deported with her mother when her mother is deported. Is this a deportation case? No, sir. Okay. That's only one of the issues in the in the matter. But the crux of the matter is this, is that the mother was deported because of actions that were set in motion by Appellee's Beth Howard and her friends within the LAPD. March 21st, 2001. And when Beth Howard instigated the action to have my client arrested and her friends counseled within the Los Angeles Police Department, counseled and advised her how to do it, that set into motion all the subsequent harm that was done not only to the mother but to the little girl. Counsel, I reviewed the record and I want to make sure I'm correct on this because I understand it. The homeowner seems to say that she found a bulge in your client's purse, Miss Perez, and it was her last day she'd given notice I'm going on. She then says she found two blouses that were new that belonged to her. That's what she says. The next thing that I can find in the record of significance is she's called the police. Please show up and find your client and the homeowner in a discussion about this. And she tells the police that your client Perez had taken the two blouses and she found them in the purse. Is that relatively correct so far? Yes, with some other. Yeah, you can fill it in. I just want to make sure I'm going the right path. Then what I have a problem with is it seems to me that at that moment there's some discussion about what's going to happen. And the police, as I understand it, advised her she could make a citizen's arrest. Nobody observed this act of your client if it ever happened. And at that point, as I understand it, your client admitted she took them because she was underpaid. Is that correct? That last part is incorrect. OK. Your Honor. Well, the police officer said she said that and then she changed her story. Is that that's correct? The assertions by the city of Los Angeles that both of you have just recited. Their assertions, that part is correct in the record. But what is not true is that she that my client admitted that the police officer that she took the items. That part is not true. Well, if it's not true, where is the evidence that it that she asserts that it's not true or what? Why do you say it's not true? Because when I submitted the supplemental excerpts of record, I included a declaration that was signed by Grona Lopez Perez, the mother, which was faxed to me from Guatemala. OK. I want to stop right there. That's exactly what I found in the record. But that was after the act and after she she did a no plea on criminal trespass. Correct. Yes. But she never. Excuse me. She's nowhere in the record that I see her denying that she took the items at the scene, at the arrest, at the plea or after she was sentenced on the criminal trespass. It came up later when you when you said and I think that declaration was in the summary judge. It was in the motions that you had the evidence that you produced for the opposition post opposition. OK. All right. All right. Council. One more point in that declaration. She says that she did not have those items when the police came. She didn't say she didn't take them. Am I right? No. She did tell the police officers that I didn't steal. And the response of the police officer to the month there was this lady is a volunteer. She does not know. I'm just I'm now focusing on the declaration. What exactly is in the wording of that declaration? If you wish, I could pull it. I think you should. OK. Are we looking at the declaration opposition to defendant Beth Howard's motion for summary judgment? Yes, sir. OK. That declaration was for the first summary judgment motion hearing on March 25. And that declaration was signed on March 13th, 2002 in Malacatan, Guatemala. And she basically contradicts and impeaches the police officer for the month. She stated that she did not have anything in her person, purse or clothing that belonged to Beth Howard when the police arrived. And that after the as soon as the police arrived, they began to speak to Beth Howard. And then after speaking with Beth Howard, the Latino police officer put his hand, put handcuffs on her and questions her. And she denied to the police officer stealing anything. And the police officer told her Beth Howard does not lie because she's a volunteer with the police department. But that information was never conveyed to the city attorney's office. That's Brady esculpatory material. This Latino police officer said nothing about her denials at the scene to her. The mother, Gremio Lopez Perez. This is this is where this whole case troubles me. I see nothing in the record that she attempted to use that information that she's got in this declaration. Number one, to challenge later her NOLO plea or to challenge the fact that she was convicted of criminal trespass. Nothing about what her lawyer did to her or anything else. It comes up only at this context when you get her into court. So you're the first person that gets her into court with this information, as I understand it. So that means the next question, what do we do and what is the effect of the NOLO plea? OK, I was with her when she took the NOLO plea. OK, why didn't you raise this then? The NOLO plea was the best situation under the circumstances. That's not the issue. Why didn't you raise this? You're now raising it now. You're collaterally attacking something you walked her into under the NOLO plea. I'm sympathetic with you, but how do I handle this? OK, I understand. At the time that the plea was taken, I told the deputy city attorney, look, she didn't steal anything. One of the considerations in this deputy city attorney to drop the theft charge and to entertain the trespass charge was the vehement denials that I conveyed to the deputy city attorney that she never took it. It was not in the form of a declaration because she was in custody, but it was in the form of my affirmation to the deputy city attorney that she has denied from day one and further that you were never told the whole picture in this case. In fact, the other part of the picture was that Officer Pedamonte, the Latino officer, he heard from Beth Howard that Beth Howard kept her against her will at the residence, which is a crime of false imprisonment. And he ignored that because of the preferential treatment that the LAPD always gave her because she's connected to the captains at the Van Nuys station, at the North Hollywood station. She's well-connected to all the officers. So the problem arose in the context that we have a dispute between two women, one which is well-connected to the LAPD. The other one is not. I understand all that because now you have to move into the argument because if in fact this is all true, doesn't the NOLA wipe it all out? I mean, this is all collateral to the fact. See, I'm having trouble. How do I write this relative to the NOLA plea in the context of now you've got a 1983, which is challenging these criminal things? When I read Heck, from what I recall, Roy Heck is a guy that was serving 15 years for some mass slaughter offense. And while he's serving his 15 years, he's challenging his arrest in all of the proceedings that occurred in the criminal case. In our context, that was not the case. She's not in jail. She's on supervised release. Well, actually, I don't know because she was deported. Two years. She's deported. Two years, supervised release. Well, then there would be an issue legally then whether in fact Heck would apply because she's not in custody. Is that it? Yes, and she's not in custody at the time. And so over the summer after her deportation, I learned that the little girl was having problems with the diet and the water, and I agonized what can be done to remedy her situation. That's why I consulted with the specialist, as I put in my declarations to Judge Dickren-Travese in that I just didn't nilly-willy file a lawsuit. I consulted with people who I respected. What sort of remedy can a little girl who's deported along with her mother have? I want to question something here. You, in your grief, have now stated the little girl was deported. How can you deport a U.S. citizen? She wasn't deported. She voluntarily left or was taken by her mother when her mother was deported. She was deported even though the record does not have it. The service, the INS at the time, bought her the airplane ticket so that she could go with her mother. I want to know what legal process deported the 4-year-old child. The correct terminology would be she was transported along with her mother who was deported. So when I use the word deported, impracticality and all, that is what happened. I'm sympathetic with you, but I can't legally figure out how you can use a word deported as to the child because the child was a minor child left with the mother who was deported. And why was the mother deported? She was deported, as I try to explain in all my briefs, because in 1997 when she was pregnant with the U.S. citizen, the little girl, Yanira, who was born 3 or 4 days after her last immigration court appearance, she couldn't make it. Four years passed and she never showed up. She just stayed silent in the United States without visibility until she ran into the system. Now, whether she ran into the system and the system ground her up, the only reason that the deportation happened is because she failed to go back and do what she was supposed to do at the hearing. Isn't that right? You know, you're right, but I don't really know if she was deported because she failed to appear or because there was a detention order out on her. Well, but if her claim for political asylum was denied, then it would be the same effect. She would get a deportation order down the road. And that's what I'm unclear about because I never saw the immigration file on her. The point is that because she couldn't make the last court appearance to fight her political asylum claim, the deportation order I'd automatically issue. But it did not issue because she was convicted for theft. That's the point that I was trying to make to Judge Victor Trevisan. And we argued on that point at the hearing, and it's in the record on page 157 and 158, 159. He was thinking that she was deported because she committed a crime. And I was saying, no, she wasn't deported because she committed a crime. She was deported because four years earlier she was pregnant. She couldn't go to her last immigration court hearing. And Yanira was born three days or four days after. That's why the deportation order arose. But I agree with you. If she hadn't had this contact with the state and with a citizen who was acting in concert with the state agents, this deportation order would have never surfaced. And I ask you, in four years that she continued to work after the deportation order, obeying all laws, not coming into contact with any police officers, she may have continued another 40 years for all we know living in the country. But that's a social political issue. We're here on a 1983 action. Yes, sir. That's why I'm trying to sort all these facts out. Yes, sir. I agree with you. That is a social political issue. It has to do with Bush offering visas to undocumented workers. But what worries me about your argument is you're now sliding into your Rule 11 problem. I mean, you continue this argument, and I was skeptical about the Rule 11 problem. But I'm trying to sort out your 1983 to keep out of the Rule 11. But when you're talking about Bush and social political problems, it's starting to slide into Rule 11 to me. Okay. This is what I want to say, too, and I believe I pointed it out in my briefs. Contrary to what the attorney for Beth Howard says, this was no harassment on my part. Harassment would have been to report Beth Howard to the state authorities or federal authorities for not reporting taxes when she paid my client. That would have been harassment. A lawsuit filed on behalf of the little girl, and clearly, heck, does not apply to bar the little girl's case. Even Judge Trevisan agreed on that point, but he said that I didn't have enough evidentiary foundation to oppose the motions, the various motions against the little girl. But he agreed, and even the city attorney notes it in her papers, that the judge said that heck does not bar the little girl. Heck does not bar the little girl, and therefore, what new remedy can I fashion to help bring back the little girl from Guatemala? That's where the experts come in, and I forgot to mention that I had a discussion with a lady practitioner. You want to bring her back with her mother, of course. Does that what you have in mind? I want to bring her back with her mother or without her mother, but I want to bring her back. It's an immigration case. That's why I'm saying we're sliding into Rule 11. This is a 1983 action, and what you're telling me is that of all the sociopolitical prisoners in this United States that are being deported and are taking their minor children, each one of those minor children has a 1983 action. That's what you're asking us to write, because she wasn't deported. Unless you can show me something legally that she was deported, we now have minor children that are having to leave the country because they have to. Their parents are gone. Can't leave a four-year-old here. So you're saying now those four-year-olds can bring 1983 actions based upon whatever caused the deportation of the mother, and now they have a 1983 action. That's going to be an interesting one to write. You're giving Mr. Yagman a lot of ideas. I can see him moving back there. He's getting very interested in this. Actually, I put the case of Yagman in my brief. I don't know if it's in my reply papers. This is living law here today. I put the other case, I think it's Foster v. Schinner, where the attorney's advocacy should not be chilled by Rule 11 sanctions. And you have to see it in the context of the summer and fall of 2001 before I filed the lawsuit on behalf of the little girl. What you're interested in is getting the little girl back in the United States? Yes, sir, and to provide a legal remedy when state actors and state actions work in conjunction with the private party. Well, but she can always come back. She's a U.S. citizen. Yes, sir. You said with or without the mother.  Where's Mr. Lopez? I don't know. You're obviously a Mr. Lopez because the child's name is Lopez. I didn't see anything in the record, so we don't know why she had to go with her mother. I don't know a Mr. Lopez. It's blank in the record. I've never met the father. I just remember the mother's situation. And looking at it in that light, how could there be Rule 11 sanctions when Heck does not bar the little girl's lawsuit? And when I'm trying to establish a remedy for U.S. citizens to sue state actors and private parties when the actions cause the little girl to be thrown out of the country. And remember in the record, the excerpts of record are in my brief, where I put what I thought was a significant fact. After they cause the arrest of the mother, they go back to the garage. Beth Howard shows the police officers the Mercedes Gullwing vehicle belonging to her husband. In my mind, I had a vision that after they arrested Gronia, they're giving high fives to each other for a job well done. To me, this was a joint action, joint concert by all the participants. And the case that they cite, Collins v. Womancare, does not apply because.  So, yes, sir. Good morning, your honors. My name is Amy Seale, Deputy City Attorney on behalf of the City of Los Angeles, Bernard Parks, James Hahn, Walter Brandt, and Oswaldo Piemonte. Before we even get started here, Judge Trevizan ordered you to prepare a final judgment in this case. You never did it, and it was never filed. Is that correct? It may be, your honor. He wouldn't have ordered me personally. I quite frankly don't remember. That portion of the record, it would have been the trial attorney, and if it wasn't, I apologize. It's very sloppy on the part of the city, and it raises some issues as to whether all issues in this case were decided and dismissed. There was an issue in respect to advising the Mexican Consul. There was an issue as to certain state law claims, which are never handled. I don't believe there were any state law claims in this case, your honor. There are. There are. I looked at the complaint just yesterday in preparing for my oral argument, and I remember seeing in one of Judge Trevizan's orders a mention of state law claims, and I had a moment of panic where I thought, gosh, have I not addressed them? And I went back and looked at the complaint. Well, it's found in reference in his order. He thought that they were there, and he never disposes of them. So I just want to say to the city of Los Angeles that your practice needs some shaping up. And we may not even have a final order here. This may all go away. I appreciate your comments, your honor. I do believe, I think I can represent to the Court today that I refuse a complaint. I think there were only 1983 causes of action. And I think by the time we, you know, had gone through five rounds of motions for summary judgment, we did have a final order resolving all claims against all parties. Possibly, possibly that's true. But you didn't do what Judge Trevizan told you to do and which is supposed to be done. I agree, your honor. I appreciate the comments, and I will return those to my office. Beyond that, I think that Mr. Creo has argued a lot of things that really don't have anything to do with what the case at hand here is today. And what this is, is it's a 1983 action, Fourth Amendment claim alleging an arrest without probable cause. His client pled guilty. By pleading guilty, she conceded that she was engaged in unlawful conduct. She pled NOLO contendery to a different charge. That's correct, your honor. Okay. She pled NOLO to the reduced charge of trespass. And in doing so, she conceded that she had been engaged in unlawful conduct. And to me, it seems that this hits the heck rule squarely on the head. How can she claim that there was no probable cause to arrest her when by her NOLO plea, she's basically admitted. A NOLO plea doesn't admit anything. In her plea, she, the judge makes a finding that there is a factual basis for her plea. It's a finding made right in the record. What's the legal effect of a NOLO plea? In terms of a 1983 action, I think the legal effect is that. I know what you think. Tell me what the legal effect is and what's your authority about why the NOLO plea will lead us into a heck situation. See, that's the problem here is can you get a NOLO plea and a criminal trespass without an arrest? In other words, everything happened because it was, as I understand it, a citizen arrest by the homeowner, right? A citizen arrest coupled with the officer's independent investigation. We're not relying solely on a citizen's arrest. I mean, they did interview both parties. I'm not here to question. I'm just trying to get answers. What I'm trying to say is there was an incident which led to an arrest, which is a legal act, not discussion, not investigation, by the homeowner making a citizen's arrest of Ms. Perez, right? Right. And the citizen's arrest was made because she said Ms. Perez took property that belonged to the homeowner. That's correct. Which would have been a petty theft. Yes. Then there's a negotiation, whatever, I'm not too sure in the record, which resulted in a NOLO plea to criminal trespass. Does that stem out of the citizen's arrest? In other words, can you just reach up on this guy and say, why don't you plea NOLO to trespass because today is sunny and we might as well do it because there's nothing else to do? It happened because she was arrested, correct? That's correct. Okay. So what is the legal effect in a HECT analysis of an arrest, a NOLO plea to a charge of criminal trespass? I think the legal effect is you have to look at the NOLO plea and compare it to the 1983 cause of action and ask the question, are the two results inconsistent? If she were to succeed in the 1983 action and prove that she was arrested without probable cause, is that inconsistent with the fact that she's pled NOLO to a criminal act? And the 1983 is based upon a false arrest or theft, petty theft. Is that right? The 1983 is based on a false arrest. A false arrest. But the arrest was for petty theft, not for criminal trespass. Yeah, that's what the officer ---- So what difference does it make whether she pleads to criminal trespass then or petty theft as the arrest? I think in a Fourth Amendment analysis, it's not determinative what charge the officer believes he's arresting her on. She was put in custody because of the petty theft. She was never released from custody. And the only reason she ever got out is she pled theft, she pled for criminal trespass, was given a buy on 30 days served and two-year probation. Is that what happened? Yes. Okay. And you're saying that legally will then allow you to say what you're doing by bringing in 1983 on the arrest is challenging your final conviction, which was the criminal trespass. Yes. I think you end up with two inconsistent results. And, you know, I've got to say that I see the problems Your Honor is pointing out with the Heck analysis in this case, in the case of a NOLO plea. I think that the cases interpreting Heck are kind of all over the board. I can say that I do see a lot of unpublished opinions, which, of course, I can't cite to coming out in prisoner cases where Heck has been applied by this Court to. You can't cite them. Exactly. We're looking for the law because this case is going to be centered on exactly where we are right now. I think that even if the Court is having problems with the Heck analysis, and I think it does fit if you give a broad interpretation to the rule in Heck that you just don't want to end up with these inconsistent results, I think you can apply Heck in this situation. But I think even if Heck doesn't apply, on the merits, this case fails. I mean, on the merits, this is a, I was arrested without probable cause, and I think the record clearly establishes that the officers did have probable cause to arrest her. That goes back to our discussion with the counsel was, what were the facts? And as I understand, prior to the arrest, the only facts on the table uncontested, including through the NOLO plea, is the fact that the police officer said she admitted taking those items. I think that's correct. And there's nothing in the record or challenging that later until the 1983 comes up. I don't really even think it's challenged in the 1983. Well, there's a declaration that says she didn't take them. Well, you know, and I was, unfortunately, I don't have the declaration with me, but I have. I have it here. It's exactly what counsel said. Yeah. I have his reply brief where he's quoting it from this declaration. She denies stealing anything, but she never denies that Howard found the clothing in her purse. She never denies that Howard told the police officers. Well, they're parallel declarations like any depositions or parallel statements, but what she says, I didn't steal them. So you can take whatever you want. Still, it came four, I don't know how many years after the NOLO plea, the conviction, and the fact that she's out on two years' supervised release. I think that's correct, Your Honor. And I think that even if it had come a little earlier, a suspect's denial is not enough to negate probable cause. I think the officers did ample. What was the basis of the officers' probable cause? The statements from Beth Howard, the evasive conduct of Bronya Perez, where she initially admits to taking them. No, I didn't take. Doesn't the misdemeanor have to take place in the presence of the officer? Under California State law, that is correct, Your Honor. And I think that was kind of the theory that Mr. Carrillo proceeded on on his Fourth Amendment claim. But Berry v. Fowler is directly on point. And Berry v. Fowler, which I cited in my brief, says that violation of State law doesn't control a 1983 action. The inquiry in this case, and in a 1983 action, is whether there was probable cause for the arrest. And I think here there was, even though the misdemeanor was not committed in the officer's presence. Unless the Court has any further questions, I will submit on my brief. Why don't you talk to me about Rule 11? I'm going to leave this for Mr. Stratton. We were not involved in the Rule 11 proceedings. That was a motion brought by Bethel's attorney. Excuse me. All right. Good morning, Your Honors. Good morning. Larry Stratton for Ms. Howard. What I'd like to do in the very beginning is to sort of set the groundwork for this. As is probably evident from the record, Ms. Howard is not an employee of the city. She was a simple volunteer for the police department. She enjoys none of the protections of the civil service system, and she enjoys none of the guarantees or protections of the indemnity provisions for defending this action. This action is being defended by Ms. Howard solely out of her own pocket. Let's assume she's completely locked up with the police department. She contributes money. She goes to the dances. She's frequent with them all the time. She's buddy-buddy, and if she calls up, they're there in 10 seconds. So what? What does that do legally to this case? I don't think that does anything legally to this case. I didn't see a conspiracy alleged. So what happens if Ms. Howard can get the police there instantaneously and if she's believed everything she says? If Ms. Howard contacts the police and is believed as with the scenario that your Honor. That's the allegations. It doesn't say conspiracy, but it says all she has to do is call the police. She gets what she wants, basically. Your Honor, the police never still have the obligation to conduct an independent investigation. And so the fact that the police may subjectively believe Ms. Howard just based upon an experience that they've had with her or a relationship that they may have had with her or may not have had with her, that's getting pretty metaphysical. I think that what the Court has to do is take a look at not the subjective impressions of the police officer. Now, for instance, if the police officer likes Ms. Howard's car, just as a matter of example, I don't think that that would be materially different. What's talking me out here is the fact that we're talking about a false arrest and probable cause. And it seems as though when we discuss that, counsels allege certain facts, these facts which seem to be sort of innocuous, which might go to probable cause because it's what the police officers thought relative to their arrest. So if they're so locked in with Ms. Howard, how could they make a good probable cause determination? Well, counsel, beyond that, the police said we can't make the arrest unless you as a citizen make the arrest. Isn't that accurate? It's my understanding that that's what's being said. They were really there to assist her in effectuating the citizen's arrest. Well, in this particular case, she contacted the police. And as I understand the allegations, when the police arrived, she was engaged in a A police officer told Ms. Howard that I can't make an arrest because this would be a misdemeanor and it wasn't committed in my presence. Well, there is actually a specific statute that deals with this. Isn't that what he said? I'm sorry, Your Honor. Isn't that what the police officer said? That's my understanding, yes. Well, we mean it's your understanding. I mean, did he say it or not? Yes. All right. Under the – there's a certain penal code section that I think applies in this case, which is Section 847. And if there is a citizen's arrest, if a citizen does, in fact, take into custody a person who – in whose presence a crime has been committed, then that – the statute specifically states that that person must deliver the individual to either an officer or magistrate. And I think that under the circumstances, she complied with that statute. She had somebody in her house who she contended was – had committed a crime. She contacted the police. Well, where all this is going, in my mind, which is very confusing, is can you separate the false arrest and a heck analysis? Because in the long run, at the time – and finally, if you had a no and a conviction, which wasn't challenged until in 1983, what effect of all those facts are, and can you separate the false arrest to say, well, let's forget about the fact of the no, we'll just forget everything else. This situation between the police and Ms. Howard produced a wrongful, a false arrest, and therefore we're going to separate it from everything. I think that's – and so that goes to the 11th. Is that – is that really frivolous? Well, there's two – there's two aspects to the 11th, and I'll get to the Court's question in a second. There's two aspects to the 11th. The 11th was not only based upon the heck analysis, but it was also based upon the idea that – or upon the fact that there was no allegations vis-à-vis the daughter. There's no – there's no claim or fact showing that the – She had a guardian ad litem appointed, as I understand, and she's four years old, so my guess is – and we don't have anything in the record, so I don't know if that's frivolous or not. You'd have to explore what the guardian ad litem said. I don't know about that, but I'm going back again to the false arrest. How come – is that really frivolous to separate the false arrest from all this other stuff that no – and say, no, you can't bring it? I thought I read some law here that might indicate that you may be able to separate the false arrest based on 1983 without getting into heck problems. Well, the way I read heck, Your Honor, is that – is that heck doesn't rely upon anything that precedes the actual conviction. I mean, the seminal issue, insofar as heck is concerned, is the conviction itself. Exactly. And so what occurred before the conviction is as if a hatchet came down and chopped it off, because the conviction occurred. The conviction is outstanding. The conviction's never been directly attacked. And through this action, the plaintiff is collaterally or essentially collaterally attacking a conviction that is still standing. She was never convicted of petty theft. Yes, but the – but the trespass nevertheless arose out of the circumstances upon which the lawsuit's being – the lawsuit was brought. Maybe. So it's my contention that heck take – you know, does take that ax and chops off at the point of the conviction. We're looking at the conviction now as the – as the basis for applying heck. When the law is uncertain, it's not frivolous to press a point. Is that correct? Well, if the law is in fact uncertain, Your Honor. And I think we all think it's uncertain in this particular area. Well, I understand that. But in this particular instance, the court not only found – based his decision, the district court not only based his decision upon the heck analysis, but in light of the argument from plaintiff's counsel that what he was trying to do was modify, extend, or test the current state of the law, which is – which is one of the arguments that he presented. The district court looked at the first lawsuit and exercised its discretion. We – Ms. Howard incurred up to that point, up to the point of the motion for sanctions, she incurred approximately $12,000 in attorney's fees. And the district court judge looked at that first lawsuit and basically said, okay, we're cutting off, you know, everything that preceded the filing of the second lawsuit. Let me ask you a question. Counsel today indicated that in seeing that a United States citizen had left – had been forced out of the country or was taken out of the country with an – her alien mother, and he had to fashion some way to get that citizen back. Does that make the whole thing frivolous? In other words, he said here today he used the 1983 to see if he could get the child back and the citizen whose rights had been denied. Is that frivolous? I think that that would go to the intent of – The intent of what? The intent of counsel in filing the lawsuit. I believe that – Tell us what his intent was. He said – Actually, I do believe that would be frivolous, Your Honor, because Ms. Howard can't add or subtract to that one way or the other. She's a citizen. She doesn't have any control over that. I don't even know if the city would have control over that, but certainly not Ms. Howard. And the fact is that plaintiff's counsel, in testing this particular hack or its application, could have done that through the mother's lawsuit and, in fact, could have done that through a lawsuit against the city, rather than filing suit and continuing to press that suit against the citizen, which is what happened in this case. And the sole basis for claiming that there was joint action between Ms. Howard and the city is the idea that she attended barbecues, which is one of the specific allegations in the plaintiff's papers. Well, is it joint action when the policeman says, I can't arrest her, but you can? Well, it's – if joint action, Your Honor, were applied to that particular circumstance, then it would put every citizen who reports a crime to the police in jeopardy for liability, which I honestly – Well, only if it's unjustified, the allegations or the claims they're making. Well, in this case, there was – ultimately, there was a determination by her to plead no law, which resulted in the conviction. Well, I'm only challenging the fact that you say it puts everybody in jeopardy. It doesn't. I understand. I may have overstated that a little bit. Yes. But I think I've covered all the points that I had, Your Honors. I'll submit. Thank you. To rebuttal, Mr. Carrillo. Yes, sir. I just wanted to add that in both the little girl and the mother's 1983 action, there was an allegation in both cases that Beth Howard and W. Grant and Ope Damonte, the police officers, did deliberately plan, agree, and conspire to wrongfully, unlawfully, and maliciously, falsely arrest the mother. So that was there. But the interesting thing is – To what end? To get her deported? To get her arrested, not deported. Okay. Because nobody at that time, I think, was aware that there was an existing deportation order. The interesting thing that I didn't address in my papers in listening to the three of you – Let me stop you there a minute because I read that, you know, and that troubled me. If they wanted to arrest her, was it because she was quitting or that she was going to leave? They knew that she was a military or she spoke Spanish. Why did they want to arrest her if they wanted to false arrest her? I mean, was it just that they go around doing this all the time? That's why I couldn't tie into your theory. Why did they falsely want to arrest her? Because the joint action of the LAPD and Beth Howard came about because of the strong association. Oh, I know. But did they roam the streets finding people to arrest? I mean, why did they pick on her? And that's what I'm trying to put into your 1983 complaint because I read all that. They picked on her very simply because both parties, Beth Howard and Grona Lopez, were not on equal footing. Is it because she's Hispanic? Is this a race thing? They weren't on equal footing for class and language reasons. The class language is you have a homeowner, you have a house cleaner. There's a bias by the police coupled with the association of Beth Howard with the police. And then the language thing is that... It sounded like a discrimination action to me. Well, if I had the benefit of what I know now, I may have alleged that then. But it was a class and a language thing that they caused to pick on Grona because they were not on equal standing. They spoke to her first in English to Beth and then they come and interrogate in Spanish Grona. And the police officer doesn't tape record what Grona is denying to him. So he puts self-serving declarations to help his friend, to help a friend of the LAPD at the North Hollywood police station. The question that you raised, which I didn't address, is a very interesting one. And also your colleague, what's the legal effect of a NOLO plea on the trespass charge? And I didn't intellectually formulate those issues. But I do want to just add one more thing, is that the lawsuit of the little girl was filed in December of 2001, which is like six months after both were taken to Guatemala. And Judge Trevisan handed his first order in March 25, 2002, dismissing the mother's lawsuit. So the sanctions were for March 2002-25 until June 18, 2002, the same year. For that period of time, from March to June, where the little girl's lawsuit was still maintained because it was not filed. The little girl's lawsuit was not filed after Judge Trevisan had dismissed the mother's lawsuit. It had been filed months earlier. But for those three months of time, that's when he sanctioned me under Rule 11. And he didn't even listen to any of the arguments that I was making, where I was alleging, look, if you have to take it to this account, why should I have to pay for their mistakes? He didn't submit a cost bill in his first motion for sanction. So that necessitated a second hearing and an additional $2,000. None of my arguments were listened to. But the main focus of what I want to say in closing is what this Court, the Ninth Circuit, has stated previously. And that is in the case of Matter of Jagdman, 796 F. 2nd, 1165, where it talks about that the sanctions should not be implemented to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. And that's where the little girl's lawsuit comes in, the one that I was sanctioned on. What can I do to remedy her situation in a foreign country, suffering in the diet, in the water, to bring her back? And I'm not asking for such a broad law that every parent who is deported, the child automatically has a right to sue. But only in the court. It's certainly a way to get to the I.N.S. But in those actions where the average citizen doesn't have the connections that Beth Howard has with the LAPD, unless they're a member of Neighborhood Watch and things like that, you and I can't call up our buddies at the LAPD, hey, come here, help me, help me arrest this lady. We can't do that. So when you have those circumstances, that's when the remedy should be fashioned so that a U.S. citizen can sue the state actors and the private parties of the world when they cause these effects for a four-year-old little U.S. citizen child. Thank you. Very well. Thank you. The matter will stand submitted. And now we'll call the next item, Adams versus Kastner. Thank you.
judges: B. Fletcher, Pregerson, Brunetti